## CLARK *against* WALLACE.

A defendant against whom an award of arbitrators had been made, applied to the Prothonotary, on the twentieth day, after night, and after the office was shut, to enter an appeal; the Prothonotary having then refused to go to his office, at the next court, a motion was made for an order, that an appeal might be then entered *nunc pro tunc,* which the court refused: *held* to be erroneous.

Error to the Common Pleas of *Huntingdon* county.

The facts of this case are fully stated in the opinion of his Honor, who delivered that of the court.

*Blanchard,* for plaintiff in error, cited 1 *Serg. & Rawle,* 412

*R. Wallace* and *Potter,* for defendant in error, cited *Jacobs's Law Dig. Title "Day."* 3 *Stark.* 1406. 2 *Con. Rep.* 69. *Whart. Dig. Title "Day and date."*

The opinion of the Court was delivered by

Ross J.—The case was originally an appeal, entered in the court of Common Pleas of *Huntingdon* county, from the judgment of a justice of the peace. It was afterwards arbitrated under the compulsory arbitration law, and a report made by the arbitrators, on the 15th of October, 1831, in favour of the plaintiff, for eighty-six dollars, and fifty cents. This award was filed in the Prothonotary's office of said county, on the 18th of October, 1831. A

(Clark v. Wallace.)

motion was made by the attorney for the defendants at November Term, 1831, on the 14th day of that month, to allow them to enter an appeal from the award of arbitrators.    On the 19th day of November affidavits were filed, and on argument the motion was overruled by the court.    The defendants predicated their motion upon the matters stated in the affidavits: the substance of which was, that the defendant *Nevin*, went in company with several persons to the Prothonotary's office on Monday evening the 7th of Nov. 1831, for the purpose of paying the costs and entering into a recognizance and appealing from the award of arbitrators.    He had been informed by the Prothonotary a few days previous, that an appeal might be entered on the evening of the 7th; and had accordingly called at the office between the hours of half past five and six o'clock, P. M. of that day; but did not find the Prothonotary in the office. He then went to the dwelling house of the Prothonotary, and was informed that he had left the house a few minutes before.    In about fifteen or twenty minutes, the defendant again went to the house and was again told that he was not at home; and that he had requested them to inform any person who might call on business, that he would be at home about eight o'clock, P. M. It was then about six o'clock.    The defendant afterwards met the Prothonotary near his office, and told him that he had come prepared with his surety to enter an appeal.    The Prothonotary replied that it was rather late, and upon being told that the defendant had been twice both at the house and office, and that it was the last day on which the law would allow an appeal to be entered, after some hesitation, stated that he could not or would not go to his office.    This conversation took place, according to the deposition of Mr. *Nevin*, at twenty minutes past seven o'clock; and according to the deposition of *Clark* about eight o'clock. It was also proved that business had been frequently transacted with the Prothonotary after night, in his official capacity.

On the part of the plaintiff, it was proved by the Prothonotary and his clerk, that they were constantly engaged in their office during the whole of Monday, the 7th of November, until it became too dark to write; and that they then closed the office and returned to their dwelling.    After he had supped, the Prothonotary walked up street: it being then completely dark. During all this time, no application was made by any person for an appeal.    On his return towards home, he was met by a Mr. *Nevin* and another person with whom he was unacquainted.    Mr. *Nevin* said that he wished to enter an appeal; and upon being told, that it was then eight o'clock, he replied that he supposed it was that late. The Prothonotary then informed him, that he would not open his office at that time of night to do a judicial act.    It was further proved, that the de-

(Clark *v.* Wallace.)

fendant *M. J. Clark,* was seen frequently during the day, walking by the Prothonotary's office.    The clerk in his deposition, stated, that after he had taken his supper, he walked out through the town, and returned in less than half an hour to the dwelling house of the Prothonotary, and remained there until near eight o'-clock.    He had no knowledge of any application having been made for an appeal during that evening.

I have been thus particular to give a full view of the evidence upon which this motion was predicated, in order that the question which has been raised, may clearly appear, and not be misunderstood.    The second error assigned, does not fairly arise from the facts disclosed, and the court cannot be called upon to say, whether or not the appellant has until twelve o'clock of the evening of the twentieth day to enter his appeal.    No general rule can be made, or will be laid down at present, upon the subject. Each case should be determined according to the particular circumstances attending it.    Where fair and reasonable efforts shall appear to have been made by the party desiring to appeal; and he is prevented in consequence either of the negligence, or of the *mistaken* notions of the officer, as to his own official right, or the rights of the appellant, the court will, if application be made at the earliest opportunity, direct the appeal to be entered, this they are bound to do; because the trial by jury must be favored, and if possible, preserved to all suitors; it being a great constitutional right never to be wantonly taken away or destroyed, either by the legislature or the court.    The legislature has shrunk in the time of the highest excitement, from every attempt to violate the constitution in this respect.    In this case it was proved, that the appellants called at the Prothonotary's office, for the purpose of entering the appeal about half past five o'clock, and that the office being found closed, they sought for him until nearly eight o'clock, when they met him, and he declined going to his office, and refused to enter the appeal.    Under these circumstances, there was certainly nothing unreasonable in the application.    The time in the evening was not a sufficient excuse for the refusal; the consequence of which was the depriving him of the right to appeal.    The Prothonotary had previously transacted business in his office after night, and he had, moreover, informed Mr. *Nevin,* that the appeal could be taken in the evening of that day.    It was, therefore, clearly the duty of the Prothonotary to have entered it; and when he refused to do so, it was the duty of the court, from the evidence laid before them, to have ordered the appeal to be entered at the time of the application *nunc pro tunc.*    In this state, offices are created for the benefit of the people and not for the benefit of the individuals who are appointed to perform their duties.    The court of Common Pleas erred in not directing the appeal to be entered *nunc pro tunc,* and this Court now directs the said appeal to be so entered.